

ELECTRONIC

**August 29, 2007**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.

KEN L. MULLENS,          # 07-CV-80782 Ryskamp/Vitunac

Plaintiff,

v.

FPL ENERGY, LLC,
a Florida corporation, and
FPL GROUP, INC.,
a Florida corporation.

Defendants.

_____/

### COMPLAINT

The Plaintiff, KEN L. MULLENS, [hereinafter referred to as "MULLENS"],

by and through undersigned counsel, hereby sues the Defendants, FPL

ENERGY, LLC, a Florida corporation, [hereinafter referred to as "FPLE"], and

FPL GROUP, INC. [hereinafter referred to as "FPL GROUP"] and/or collectively

"Defendants", and as grounds therefore states as follows:

### PRELIMINARY ALLEGATIONS

1.      MULLENS brings this action against the Defendants to recover back pay,

front pay, prejudgment interest, compensatory damages, special damages and

reasonable attorney's fees and costs for unlawful retaliation in violation of 18

U.S.C. § 1514A, the civil remedy to Section 806 of the Corporate and Criminal

Fraud Accountability Act to the Sarbanes-Oxley Act of 2002, 107 P.L. 204, 116

Stat. 745 (hereinafter "Sarbanes-Oxley), and §448.102(1) (2), and (3); and §448.104, of the Florida Whistleblower Statute.

2.     MULLENS brings this action based on his direct, independent, and personal knowledge and also on information and belief.

## JURISDICTION

3.     MULLENS is an individual who was employed by the Defendants from approximately 1979 through January 17, 2007, when he was involuntarily discharged for lawfully objecting to, opposing, providing information about, causing information to be provided about, and/or assisting in an investigation regarding conduct MULLENS reasonably believed constitutes violation of 18 U.S.C. §§ 1341, 1343, 1344, or 1348, violations of rules and regulations of the Securities Exchange Commission, or any provision of federal law relating to fraud against shareholders committed by Defendants. MULLENS sues these Defendants under Sarbanes-Oxley and additionally sues the Defendants under Florida's Whistleblower's Statute. MULLENS seeks to recover back pay, front pay, compensatory damages, special damages, and his reasonable attorney's fees and costs as a result of Defendants' unlawful misconduct.

4.     The Defendants are "employers" within the meaning of Florida's Whistleblower Act, § 448.101, et seq., Fla. Stat.

5.     Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1514A. This court has supplemental jurisdiction of MULLENS' state law claims pursuant to 28 U.S.C. § 1367.

6.     The actions giving rise to this litigation occurred in Palm Beach County, Florida, and at all times material and relevant, Defendants transact and transacted business in this District. Thus, venue is proper in the Southern District of Florida.

7.     MULLENS is an individual subject to the protections of the Sarbanes Oxley Act, 18 U.S.C. § 1514A and the Florida Whistleblower Act, Fla. Stat. §448.102, et. seq.

8.     MULLENS engaged in activity under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, and the Florida Whistleblower's Act, § 448.101, Fla. Stat. He is a citizen of the United States, and resides in Broward County, Florida.

9.     Defendant FPLE is a Florida corporation that is authorized to do business and conducts business in the Southern District of Florida, and is a wholly owned subsidiary of Defendant FPL GROUP.

10.     Defendant FPL GROUP is a Florida corporation authorized to do business and conducts business in the Southern District of Florida, is a publicly-traded corporation with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l), and is required to file reports under section 15(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d).

11.     Defendant FPLE is subject to the provisions of the Sarbanes-Oxley Act, and is also an "employer" within the meaning of Florida's Whistleblower Act, § 448.101, et seq.

12.     Defendant FPL GROUP is subject to the provisions of the Sarbanes-Oxley

Act, and is also an "employer" within the meaning of Florida's Whistleblower Act,

§ 448.101, et seq.

## CONDITIONS PRECEDENT

13.     Pursuant to 29 C.F.R. § 1980.114(a), on or about February 9, 2007,

MULLENS filed a timely administrative complaint with the United States

Department of Labor, Secretary of Labor, with a copy to the Occupational Safety

and Health Administration Area Director. More than 180 days have passed since

the filing of that complaint without the issuance of a final decision by the

Secretary of Labor. MULLENS has given advance notice of his intent to file this

proceeding as required by 29 C.F.R. § 1980.114(b).

14.     MULLENS is entitled to a de novo review of his Sarbanes-Oxley claims

pursuant to 18 U.S.C. § 1514A (b) (1) (B).

15.     MULLENS has exhausted all administrative remedies prior to the filing of

this Complaint and has fulfilled all conditions precedent.

## COMMON ALLEGATIONS

16.     Defendants are engaged in the electric utility business, provide services to

residential, commercial and industrial accounts, and serve approximately 8

million people in Florida, or approximately one-half of the state's population. In

addition, Defendants have a growing presence in approximately 26 states.

17.     FPL GROUP, with annual revenues of approximately $11.8 billion, is a

publicly held company and FPLE is its wholly owned subsidiary.

18.     The Defendants are subject to the protections of the prohibitions as contained in the Florida Whistle Blower Act, Fla. Stat.§448.102, et. seq.

19.     At all times material hereto, MULLENS was employed by the Defendant FPLE, performed work on behalf of Defendants FPLE and FPL GROUP, and reported to officials who were employed by Defendants FPLE and FPL GROUP.

20.     MULLENS first began working with Defendants' in approximately 1979. Since 2001 MULLENS worked as a Safety Professional for the Defendants, performed work on behalf of both Defendants, and reported to management of both Defendants.

21.     As Safety Professional, the principal function of MULLENS job duties for the Defendants included providing leadership in Safety by assessing and anticipating safety needs, managing resources, proactively working with PGD and Corporate safety teams in designing and implementing culture changes geared to enhance worker behavior and job efficiency, ensuring Defendants' plants were in compliance with company, state, and federal standards, working with union leadership to help foster an effective relationship in the area of safety, providing information to plants that would enable them to pinpoint problem areas, designing and implementing innovative tools and techniques that would effect positive changes in the work environment resulting in an injury-free workplace, and working as a member of PGD and Corporate Injury Review Teams to determine injury status for internal and governmental reporting so as to ensure that the Defendants' safety programming operated in a safe as well as cost-effective manner.

22.     As Safety Professional for the Defendants', MULLENS was a member of the Defendants' PGD and Corporate Injury Review Teams, which were charged with determining the status of all of the Defendants' work-related injuries and accidents and investigating, evaluating, and making root cause determinations regarding OSHA-recordable injuries and illnesses suffered by employees of the Defendants.

23.     In approximately April 2005, while the entire Safety Team was participating in meetings at Defendants' Corporate Headquarters in Juno, Florida, MULLENS was placed in charge of all safety programming for FPLE and was responsible for overseeing safety programming for all of Defendants' FPLE and FPL GROUP's non-regulated assets.

24.     Nonetheless, during the entirety of 2006 leading up to his involuntary discharge in January 2007, after complaining about activity which MULLENS reasonably believed constituted a violation or violations of SOX, including Section 302, 404, and 406 of SOX and 18 U.S.C.A. § 1343, including complaining that the Defendants were underreporting and/or misreporting OSHA recordable injuries so as to underplay the severity of actual injuries and create a work environment which appeared to be "safer" than it actually was, MULLENS was denied essential information for determining the status of injuries and performing due diligence regarding reports submitted to OSHA

25.     Further, in 2004, MULLENS learned that several FPLE Operations technicians at the Marcus Hook Plant in Pennsylvania narrowly escaped potential injury or death when they grounded a 230 KV energized line because they did

not have a clearance (LOTO) in place and were not trained to perform high voltage switching.

26.    Upon investigation, MULLENS learned that plant management and FPLE operators were in violation of the FPLE Safe Work Practices Manual and 29 C.F.R. 1910.269 (Electric Power Generation, Transmission, and Distribution). MULLENS reduced his findings regarding the accident in writing. Thereafter, MULLENS was pressured by Mr. Bill Reichel to make changes to his reports, including that the root cause of the accident occurred from "working without a clearance or a switching order." MULLENS received an email from Al Alfonso, who asked MULLENS why the root cause of this accident was not working without a clearance.

27.    Pressured by management of Defendants, MULLENS changed his report regarding the Marcus Hook incident so that it would not show a violation of governing law.

28.    However, in approximately March 2005, MULLENS submitted an addendum to his 2004 performance review which discussed and referenced MULLENS' original report and original findings.

29.    As before, MULLENS was pressured to retract his opinion as to the root cause of the Marcus Hook incident, this time by David Burrage Safety Manager. MULLENS, however, refused to do so, and insisted that this information remain a part of his permanent personnel records.

30.     Additionally, MULLENS voiced concerns to Defendants' management of other improper underreporting or misreporting of OSHA-recordable injuries involving the Defendants' employees.

31.     For instance, in approximately February 2005, MULLENS learned that Plant Manager, Rudy Sanchez, had purposefully misrepresented facts regarding employee Roy West's work-related injury so as to hide the true facts relating to West's injuries.

32.     Although MULLENS learned that ROY WEST had been knocked unconscious while at work, his injury was not classified by Sanchez as an OSHA recordable injury, as one of this level of severity should, even after this was brought to Sanchez's attention by ROY WEST.

33.     However, after MULLENS learned from West himself that West had in fact been knocked unconscious as a result of his on-the-job injury and had seen a doctor, received a prescription, and had been out of work for several days and advised Sanchez of this, upon MULLENS' continued insistence, Sanchez finally agreed to correct West's injury as an OSHA-recordable.

34. MULLENS expressed concern to officials of Defendants of what he reasonably believed to be systemic underreporting of OSHA recordable and other systemic safety concerns.

35.     After voicing making these complaints, in approximately April 2005, MULLENS was contacted by Defendants' Internal Auditing (I/A), a department that had been implemented by Defendants to comply with Sarbanes-Oxley, to discuss all OSHA-reported injuries from 1998 to 2005.

36.     Thereafter, MULLENS met with two I/A auditors and Alan Harrison of the
Defendant FPL GROUP's Human Resources department, at which time
MULLENS was advised that an internal investigation was being conducted by I/A
due in part to MULLENS' prior complaints about underreporting.

37.     During this meeting, MULLENS raised concerns that he might be
retaliated against for expressing his concerns regarding the underreporting of
OSHA recordables. Despite assurances that MULLENS would not suffer
retaliation for cooperating in the I/A investigation into complaints lodged in part by
MULLENS, approximately one month after the April 2005 meeting, MULLENS
was summoned into the office of Tony Rodriguez, Senior Vice President of
Power Generation Division, for a one-on-one meeting.

38.     During this meeting, Mr. Rodriguez, who had always previously been
cordial toward MULLENS, reprimanded MULLENS for voicing his concerns
regarding the systemic underreporting and misreporting of OSHA recordables
and for cooperating with I/A as to these complaints.

39.     Subsequently, Rodriguez turned a cold shoulder toward MULLENS and/or
ignored him.

40.     Nevertheless, MULLENS continued to voice additional concerns regarding
the Defendants' safety practices.

41.     For instance, during a conference call in December 2005, MULLENS
stated that he believed at least 13 violations of federal, state, and company
regulations had occurred.

42.     In January 2006, during an annual meeting with all plant managers,

MULLENS questioned why FPL's core value of "integrity" was being removed

from the company's core values. At that time, Tony Rodriguez, stood up, and in

an angry and hostile tone, publicly reprimanded MULLENS, and advised that he

was upset that MULLENS had brought up all of the misreporting, and that

MULLENS was insinuating that Defendants lacked integrity.

43. Thereafter and as a result of Rodriguez's public reprimand, MULLENS

relationship with plant managers and his colleagues changed, certain individuals

distanced himself from MULLENS, and his ability to do his job was severely

damaged.

44.     On January 12, 2006, Robert Lorey, a Port Everglades Plant Production

Technician, suffered an electric shock while on the job. Lorey was then

transported to the Broward General Hospital emergency room and admitted.

45.     In approximately February 2006, while evaluating documentation related

to Mr. Lorey's injuries, MULLENS voiced concerns that Mr. Lorey's injury was

improperly reported as it was alleged to be not work-related.

46.     Approximately one week later, MULLENS was contacted for the second

time by the Defendant's Internal Auditing (I/A) Department and was advised that

the Lorey matter was being investigated by I/A. Thereafter, as a result of

MULLENS concerns, MULLENS learned that Mr. Lorey's injury was reclassified

to an OSHA-recordable.

47.     During the summer of 2006, MULLENS complained about an improper

reporting of a Therminol leak at Defendants' plant in California. After MULLENS

voiced his concerns, the Defendants' report on this incident was corrected to reflect the fact that a cloud of Therminol had in fact reached a neighboring highway.

48. Additionally, in August 2006, MULLENS suffered retaliation after he complained that the Defendants had engaged in wasteful practices by ordering two sets of LOTO tags.

49. Further, in 2006, and despite repeated requests by MULLENS, Defendants refused to provide MULLENS with his performance review, not withstanding the fact that all of his colleagues had received timely performance reviews.

50. Additionally, MULLENS was accused by Defendants management of engaging in insubordinate behavior when he had not.

51. Moreover, Defendants alleged that MULLENS violated company policy by improperly purchasing an item when he had proper signatory authority to do so.

52. MULLENS contends that Defendants subjected him to ongoing and repeated acts of retaliation because of his complaints which he reasonably believed were violations of SOX.

53. The Sarbanes-Oxley Act was enacted in the midst of numerous corporate scandals that rocked the foundation of American trust in corporate America. Its purpose is to protect investors and build confidence in U.S. securities markets. It increases criminal penalties for securities fraud and other violations and provides for the promulgation of codes of ethics and various other means for holding

public companies to higher reporting standards. As stated by President George

Bush, when he signed the Sarbanes-Oxley Act into law on July 30, 2002:

> This law sends very clear messages that all concerned must heed. This law says to every dishonest corporate leader: You will be exposed and punished: the era of low standards and false profits is over: no boardroom in America is above or beyond the law…the law says to workers: we will not tolerate reckless practices that artificially drive up stock prices and eventually destroy the companies, and the pensions, and your jobs. And this law says to every American: There will not be a different ethical standard for corporate America than the standard that applies to everyone else. The honesty you expect in your small businesses, or in your workplaces, in your community or in your home, will be expected and enforced in every corporate suite in this country.

54.    Additionally, the legislative history to Sarbanes-Oxley includes the

following commentary by Senator Leahy:

> In a variety of instances when corporate employees at both Enron and (Arthur) Anderson attempted to report or "blow the whistle" on fraud, they were discouraged at nearly every turn. For instance, a shocking e-mail from Enron's outside lawyers to an Enron official was uncovered. This e-mail responds to a request for legal advice after a senior Enron employee, Sherron Watkins, tried to report accounting irregularities at the highest levels of the company in late August 2001. The outside lawyer counseled Enron, in pertinent part, as follows: You asked that I include this communication a summary of the possible risks associated with discharging or constructively discharging employees who report allegations of improper accounting practices…According to media accounts, this was not an isolated example of whistle blowing associated with the Enron case…These examples further expose a culture, supported by law, that discourage employees from reporting fraudulent behavior not only to the proper authorities, such as the FBI and the SEC, but even internally. This 'corporate code of silence" not only hampers investigations, but also creates a climate where ongoing wrongdoing can occur with virtual impunity. The consequences of this corporate code of silence for investors in publicly traded companies, in particular, and for the stock market, in general, are serious and adverse, and they must be remedied. See S. Rep. 107-146 at 4-5, 10, 20, n.11.

55. During his employment, MULLENS uncovered activities which he reasonably believed were in violation of established compliance procedures and protocols, including those required by SOX.

56. MULLENS reported this irregularity to the Defendants. He did so orally as well as in writing.

57. MULLENS complaints to Defendants related to established compliance procedures and protocols.

58. As a result of MULLENS' complaints, two (2) Internal Audit investigations were conducted, and MULLENS met with officials of Defendants to provide them with evidence of the irregularities and noncompliance which he reasonably believed had occurred and was continuing to occur.

59. Thereafter, Defendant suffered discrimination and retaliation, up to and including his involuntary discharge on January 17, 2007.

60. MULLENS reasonably believed at the time of communicating these concerns to Defendants, and continues to reasonably believe, that the Defendants' actions violate federal laws relating to fraud against shareholders or violations of rules or regulations of the Securities and Exchange Commission. Defendants' unlawful termination of MULLENS was in retaliation of EVANS' communicating his serious concerns to Defendants' internal auditors and to other high-ranking officials of defendants.

61. Additionally, the misconduct described above was willful and wanton in that Defendants are well aware of the requirements of federal securities laws and the Sarbanes-Oxley Act's prohibition against retaliating against persons who

engaged in protected activity, but took action against MULLENS despite such knowledge. The conduct of Defendants deprived MULLENS of his rights under the Sarbanes-Oxley Act to report actions that he reasonably believes constitute violations of securities laws and regulations without fear from retaliation.

62.     As a direct, natural, foreseeable, and proximate result of these actions and inactions of Defendants, MULLENS has suffered injuries and losses including the violation of his statutory rights, loss of reputation, back pay, and special damages including attorneys fees and costs, compensatory damages, all of which injuries and losses are continuing and permanent in nature.

## COUNT I
## 18 U.S.C. § 1514A
## SARBANES OXLEY VIOLATIONS
## DEFENDANTS FPLE AND FPL GROUP

63.     MULLENS re-alleges and readopts the allegations contained in paragraphs 1 through 60 above as if set forth herein.

64.     MULLENS engaged in protected activity in accordance with the Sarbanes-Oxley Act.

65.     Defendants were aware of the protected activity that MULLENS engaged in pursuant to the Sarbanes-Oxley Act.

66.     Defendants caused MULLENS to suffer adverse employment actions including retaliation, harassment, ongoing loss of job responsibilities, and ultimately, a constructive discharge.

67.     Circumstances are sufficient to suggest that the protected activity was a contributing factor in the unfavorable employment actions suffered by MULLENS.

        WHEREFORE, Plaintiff KEN L. MULLENS prays for the following

relief against FPLE and FPL Group as follows:

68. Entry of a judgment for restitutionary, compensatory, and special damages, including but not limited to damages for injury of reputation, back pay with prejudgment interest and post judgment interest, front pay, and any other special damages and legal and equitable relief deemed appropriate by this court; and

69. Award MULLENS the costs incurred in this action, including reasonable attorney's fees, costs, and expert fees as provided for under the Sarbanes-Oxley Act;

## COUNT II
## RETALIATION
## IN VIOLATION OF §448.102(1)
## DEFENDANTS FPLE AND FPL GROUP

70. MULLENS re-alleges and readopts the allegations contained in paragraphs 1 through 62 above as if set forth herein.

71. During his employment, MULLENS made numerous written complaints to the Defendants regarding activities which he reasonably believed violated the Defendants' established compliance initiatives.

72. Defendants failed to redress MULLENS' concerns.

73. After filing these complaints, MULLENS suffered abuse, retaliation, harassment, an ongoing loss of job responsibilities, and ultimately, a constructive discharge.

74. Defendants retaliated against MULLENS for his legitimate complaints, including but not limited to demoting him and constructively discharging him.

75. Defendants have no just basis for MULLENS' termination.

76. Plaintiff's termination constitutes adverse employment action.

77. Plaintiff's complaint and participation constitutes protected activity which invokes the protection of the Florida Whistleblower Statute.

78. Plaintiff's complaints and his termination are causally related.

79. The Defendant's conduct as described herein violates the Florida Whistleblower Statute.

80. As a result of Defendants' conduct, Plaintiff suffered damages.

81. As a direct and proximate result of Defendants' willful, knowing and intentional retaliation, Plaintiff has suffered and will continue to suffer damages including, wages, pain and suffering, humiliation, extreme and severe emotional distress and mental anguish; Plaintiff has suffered and will continue to suffer a loss of earnings and other employment related benefits and job opportunities. As a result, Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

82. As a further direct and proximate result of the Defendants' violation as herein described, Plaintiff has been compelled to retain the services of the undersigned law firm. Plaintiff will incur and continue to incur reasonable attorney's fees and costs.

83. Plaintiff requests that attorney's fees, costs and expenses be awarded pursuant to Florida Statute §448.104.

WHEREFORE, Plaintiff, KEN L. MULLENS, prays that judgment be entered in his favor against the Defendant, FPLE and FPL GROUP as follows: That Plaintiff be awarded general and compensatory damages, reinstatement, or front pay, back pay, prejudgment interest; that Plaintiff be awarded reasonable attorney's fees and costs pursuant to Florida Statute §448.104, tense., that Plaintiff be awarded such other relief as the Court deems just and proper. Plaintiff further demands trial by jury.

## COUNT III
## RETALIATION
## IN VIOLATION OF §448.102(2)
## DEFENDANTS FPLE AND FPL GROUP

84.     MULLENS re-alleges and readopts the allegations contained in paragraphs 1 through 62 above as if set forth herein.

85.     During his employment, MULLENS was involved in the investigation of the Defendants' established compliance initiatives.

86.     As a result of his involvement in the investigation, Plaintiff advised the Defendants of items that he reasonably believed to constitute a violation of the initiatives and the law.

87.     After MULLENS made these complaints, including those related to systemic underreporting of OSHA recordable injuries, he suffered retaliation.

88.     Defendants did not redress the issues and violations reported by MULLENS.

89.     After filing these complaints, MULLENS suffered abuse, retaliation,

harassment, a demotion, an ongoing loss of job responsibilities, and ultimately,

involuntary discharge.

90.     Defendants retaliated against MULLENS for his legitimate complaints,

including but not limited to discharging him.

91.     Defendants have no just basis for MULLENS' termination.

92.     Plaintiff's termination constitutes adverse employment action.

93.     Plaintiff's complaint and participation constitutes protected activity which

invokes the protection of the Florida Whistleblower Statute.

94.     Plaintiff's complaints and his termination are causally related.

95.     The Defendants' conduct as described herein violates the Florida

Whistleblower Statute.

96.     As a result of Defendant's conduct Plaintiff suffered damages.

97.     As a direct and proximate result of Defendant's willful, knowing and

intentional retaliation, Plaintiff has suffered and will continue to suffer damages

including, wages, pain and suffering, humiliation, extreme and severe emotional

distress and mental anguish; Plaintiff has suffered and will continue to suffer a

loss of earnings and other employment related benefits and job opportunities. As

a result, Plaintiff is thereby entitled to general and compensatory damages in an

amount to be proven at trial.

98.     As a further direct and proximate result of the Defendant's violation as

herein described, Plaintiff has been compelled to retain the services of the

undersigned law firm. Plaintiff will incur and continue to incur reasonable attorney's fees and costs.

99. Plaintiff requests that attorney's fees, costs, and expenses be awarded pursuant to Florida Statute §448.104.

WHEREFORE, Plaintiff, KEN L. MULLENS, prays that judgment be entered in his favor against the Defendants, FPLE and FPL GROUP, as follows: That Plaintiff be awarded general and compensatory damages, reinstatement, or front pay, back pay, prejudgment interest; that Plaintiff be awarded reasonable attorney's fees and costs pursuant to Florida Statute §448.104, tense., that Plaintiff be awarded such other relief as the Court deems just and proper. Plaintiff further demands trial by jury.

## COUNT IV
## RETALIATION
## IN VIOLATION OF §448.102(3)
## DEFENDANTS FPLE AND FPL GROUP

100. MULLENS re-alleges and readopts the allegations contained in paragraphs 1 through 62 above as if set forth herein.

101. During his employment, Plaintiff MULLENS made numerous complaints to the Defendant regarding activities which he reasonably believed violated the Defendant's established compliance initiatives.

102. MULLENS was encouraged to ignore the violations.

103. Defendants failed to ignore the violations and continued to bring the company's failure to comply with the established initiatives to the attention of management and redress MULLENS concerns.

104. After filing these complaints, MULLENS suffered abuse, retaliation, harassment, a demotion, an ongoing loss of job responsibilities, and ultimately, an involuntary discharge.

105. Defendants retaliated against Plaintiff MULLENS for his legitimate complaints.

106. Defendants had no just basis for MULLENS' termination.

107. Plaintiff's termination constitutes adverse employment action.

108. Plaintiff's complaint and participation constitutes protected activity which invokes the protection of the Florida Whistleblower Statute.

109. Plaintiff's complaints and his termination are causally related.

110. The Defendants' conduct as described herein violates the Florida Whistleblower Statute.

111. As a result of Defendant's conduct Plaintiff suffered damages.

112. As a direct and proximate result of Defendants' willful, knowing and intentional retaliation, Plaintiff has suffered and will continue to suffer damages including, wages, pain and suffering, humiliation, extreme and severe emotional distress and mental anguish; Plaintiff has suffered and will continue to suffer a loss of earnings and other employment related benefits and job opportunities. As a result, Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

113. As a further direct and proximate result of the Defendants' violation as herein described, Plaintiff has been compelled to retain the services of the

undersigned law firm. Plaintiff will incur and continue to incur reasonable

attorney's fees and costs.

114.   Plaintiff requests that attorney's fees, costs and expenses be awarded

pursuant to Florida Statute §448.104.

WHEREFORE, Plaintiff, KEN L. MULLENS, prays that judgment be

entered in his favor against the Defendants. FPLE and FPL GROUP as follows:

That Plaintiff be awarded general and compensatory damages, reinstatement, or

front pay, back pay, prejudgment interest; that Plaintiff be awarded reasonable

attorney's fees and costs pursuant to Florida Statute §448.104, tense., that

Plaintiff be awarded such other relief as the Court deems just and proper.

Plaintiff further demands trial by jury on all issues so triable.

DATED this  2  day of August 2007.

Law Offices of Cathleen Scott, P.A.
Jupiter Gardens
250 South Central Blvd., Suite 104A
Jupiter, FL 33458
Telephone: (561) 653-0008
Facsimile: (561) 653-0020

Kathleen M. Bonczyk, Esq.
Florida Bar No. 705551

1095/55

**⚓JS 44** (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)  **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Ken Mullens | FPL Energy, LLC |
| | FPL Group, Inc |

**(b)** County of Residence of First Listed Plaintiff  **Broward**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **Broward**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Cathleen Scott, P.A.
250 S. Central Blvd, Ste 104
Jupiter, FL 33458
(561) 653-0008

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD ✓  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

✓ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

*C7CV80782 KLR/AEV*

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ✓ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☒ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

✓ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Re-filed- (see VI below)
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO     b) Related Cases ☐ YES ☑ NO

JUDGE          DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

18 USC sec 1514A, Sarbanes Oxley, Whistleblower

LENGTH OF TRIAL via **7** days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23     DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE

**FOR OFFICE USE ONLY**

AMOUNT  **3.50**     RECEIPT #     IFP

*123/19*